UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK J. M. SAMPLE,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ATTORNEY GENERAL OF THE STATE<br>OF CALIFORNIA, et al.,<br><br>　　　　Respondents. | 1:08-CV-01359 JMD HC<br><br>ORDER DENYING PETITION FOR WRIT<br>OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT<br>TO ENTER JUDGMENT<br><br>ORDER DECLINING TO ISSUE<br>CERTIFICATE OF APPEALABILITY |

Frank J.M. Sample ("Petitioner") is a State prisoner proceeding *pro se* with a petition for writ of habeas corpus.

**PROCEDURAL HISTORY**

Petitioner is currently incarcerated at Calipatria State Prison in Calipatria, California. (Pet. at 1). Petitioner's custody arose from a judgement of the Fresno County Superior Court. (Id). Petitioner was convicted in August 2006 of committing a lewd act upon a child under the age of fourteen years old (Cal. Penal Code § 288(a)). (Answer at 2; Pet. at 2).

Pursuant to several sentencing enhancements found true by the trial court, Petitioner received an indeterminate sentence of seventy-five years to life and a determinate term of twenty-one years. (Answer at 2)

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. (Answer at 2; Pet. at 3). The Court of Appeal issued a reasoned opinion on May 29, 2008, affirming Petitioner's conviction. (*See* Lod. Doc. 4).

1  Petitioner subsequently sought review in the California Supreme Court. (Lod. Doc. 7). The
2  California Supreme Court summarily denied the petition for review on August 13, 2008. (Id).
3  Petitioner filed the instant petition for writ of habeas corpus with the federal court on August
4  21, 2008 in the Southern District of California.¹ (Court Doc. 1). The case was transferred to this
5  court on September 11, 2008. (Court. Doc. 6).
6  Respondent filed an answer, responding to the allegations set forth in the petition, on
7  December 22, 2008.
8  Consent to Magistrate Judge Jurisdiction
9  On September 25, 2008, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1),
10 to have a magistrate judge conduct all further proceedings, including the entry of final judgment.
11 (Court Doc. 9).
12 On October 29, 2008, Respondent also consented to the jurisdiction of a magistrate judge.
13 (Court Doc. 14).
14 On September 28, 2009, the case was reassigned to the undersigned for all further
15 proceedings. (Court Doc. 23).

**DISCUSSION**

**I.    Jurisdiction and Venue**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. While Petitioner is currently incarcerated in Calipatria, which is not within this judicial district, Petitioner's custody arose from a judgment of the Fresno County Superior Court. 28 U.S.C. § 84(b). As Fresno County is within the Eastern District of California, this Court has jurisdiction over and is the proper venue to hear the case. *See id*.; *see also* 28 U.S.C. § 2241(d) (stating that an application for writ of habeas corpus may be filed in the district court where

---

¹Respondent admits that Petitioner has exhausted his state remedies and does not allege that the petition is untimely. (*See* Answer at 2).

Petitioner was sentenced).

## II.  ADEPA Standard of Review

In April 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions, which became effective on April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

As Petitioner is in custody pursuant to a State court judgment, Title 28 U.S.C. section 2254 remains the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a state court judgment even where the petitioner is not challenging his underlying state court conviction).  Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.*

\\\

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Furthermore, AEDPA requires that a federal habeas court give considerable deference to State court's decision. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Additionally, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was

contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).

Here, the California Court of Appeal and the California Supreme Court both adjudicated Petitioner's claims. (*See* Lod. Docs. 4, 8). As the California Supreme Court issued a summary denial of Petitioner's claims, the Court "look[s] through" that court's decision to the last reasoned decision; namely, that of the California Court of Appeal in ascertaining whether the State court's decision was an unreasonable application of clearly established federal law. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

## III. Review of Petitioner's Claim

The petition for writ of habeas corpus contains a sole claim for relief. Petitioner contends that the prosecutor struck an African American juror on the basis of her race, thereby violating the Equal Protection Clause of the Fourteenth Amendment which "forbids a prosecutor from challenging potential jurors solely on the basis of their race." *Ali v. Hickman*, 571 F.3d 902, 908 (9th Cir. 2009) (citing *Batson v. Kentucky*, 476 U.S. 79, 89 (1986)).

In *Batson*, the United States Supreme Court articulated a three part test for evaluating a challenge under the Equal Protection Clause to a prosecutor's use of peremptory strikes. *Batson*, 476 U.S. at 96-98; *Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006) (*en banc*). In the first step, the defendant must produce evident sufficient to establish a prima facie case that the prosecutor's challenge was based on race. *Kesser*, 465 F.3d at 359; *Johnson v. California*, 545 U.S. 162, 168 (2005). To establish a prima facie case, the defendant must show: "'(1) the prospective juror is a member of a cognizable racial group, (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motivated by race.'" *United States v. Collins*, 551 F.3d 914, 919 (9th Cir. 2009) (quoting *Boyd v. Newland*, 467 F.3d 1139, 1143 (9th Cir. 2006) (quotation marks omitted)); *see also Miller-El v. Dretke*, 545 U.S. 231, 239 (2005) (noting that the *Batson* Court had articulated a less burdensome standard of proof at the first stage than the one previously stated by the Supreme Court in *Swain v. Alabama*, 380 U.S. 202 (1965), which had required defendants to show that prosecutors engaged in a "continuity of discrimination over time"). Once the defendant has produced evidence sufficient to support an

inference that the strike was racially motivated, the burden then shifts to the prosecutor to offer an adequate explanation for excluding the juror. *Batson*, 476 U.S. at 97; *Johnson*, 545 U.S. at 168. In the second step, the prosecutor must "produce a 'clear and reasonably specific' race-neutral explanation for challenging the potential juror." *Ali*, 571 F.3d at 908 (quoting *Kesser*, 465 F.3d at 359). Lastly, once "'a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the strike has proved purposeful racial discrimination.'" *Johnson*, 545 U.S. at 168 (quoting *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (*per curiam*)). While "the burden remains with the defendant to show purposeful discrimination, the third step of *Batson* primarily involves the trier of fact. After the prosecution puts forward a race-neutral reason, the court is required to evaluate 'the persuasiveness of the justification.'" *Kesser*, 465 F.3d at 359 (quoting *Purkett*, 514 U.S. at 768)).

At trial, the defense challenged the prosecutor's peremptory strike of an African American juror, Ms. N, and two Hispanic jurors, Mr. M and Mr. R; the instant petition concerns only the strike of Ms. N. Both the State trial and appellate courts found that Petitioner had not established a prima facie case as the totality of the relevant circumstances did not raise an inference that Ms. N was excused because of her race. (Lod. Doc. 4 at ). A prima facie case requires that Petitioner establish that: "'(1) the prospective juror is a member of a cognizable racial group, (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motivated by race.'" *Collins*, 551 F.3d at 919. Here, there is no dispute that the first and second elements of this test have been met–namely that Ms. N is a member of a cognizable racial group and that the prosecutor used a peremptory strike to remove her from the jury panel. The only dispute thus centers around whether the totality of the relevant facts raises an inference of discriminatory purpose. *Johnson*, 545 U.S. at 168 (quoting *Batson*, 476 U.S. at 93-94).

The trial court found that no prima facie case had been made, stating that:

> It does not seem to the Court, having considered all the information that has been provided to the Court, it does not appear to the Court that [Petitioner] is either b[l]ack or Hispanic, and, therefore, the challenged jurors are not of the same cognizable group.
> It does not appear to the Court that race or gender are an issue in the case particularly. It does not appear to the Court that all of the members of either the black or Hispanic groups have been challenged, because there is at least one black member

> still remaining on the jury...Ms. [B.] and Ms. Prospective Juror Number * * * *12, Panel Two, In Seat Number Two, so there are two still remaining on the jury. And there are a number of Hispanics remaining on the jury. There have been quite a number of Hispanic potential jurors. Both sides have been excusing people of a variety of races, and the Court doesn't find that a disproportionate number of challenges are being used against any group member.
> It seems to the Court that the questioning has been essentially equally thorough and straightforward by both counsel. There are-there is information in the background, although not so much of Ms. [N.] who was challenged, but certainly with reference to the remaining jurors. There are some reasons that are not related to their racial or ethnic group that relate to the reasons why they might be challenged. And, therefore, the Court does not find that under the totality of circumstances a prima facie showing has been made, and for that reason the Court will not find the prima facie case to have been made and deny the challenge at this point.

(Lod. Doc. 10 at 396-397)

The appellate court, applying a deferential standard of review to the trial court's findings, found "substantial evidence" supporting the trial court's determination that Petitioner had failed to establish that there was a reasonable inference of racial discrimination. (Lod. Doc. 4 at 8). The appellate court relied heavily on the fact that the prosecutor's only struck two out of four African American prospective jurors. (Id. at 8-9). The California Court of Appeal additionally noted that other relevant circumstances weighed against a finding of racial discrimination, including: the prosecutor did not use a disproportionate number of strikes against members of a particular group; a number of African-American prospective jurors remained on the panel; the prosecutor's questioning of all the jurors was similar; and Petitioner was not a member of any of the challenged groups. (Id at 9-10). In evaluating the relevant circumstances, the appellate court noted, but did not give much consideration to, the fact that the dismissed juror, Ms. N, possessed characteristics that would have been favorable to the prosecution. (Id at 9).

The Court finds the appellate court's conclusion to be an objectively unreasonable application of *Batson*. The statistical analysis shows that two of four African American prospective jurors were excused. While this only constitutes 50%, the Court of Appeal was wrong to discount this statistical analysis as the Ninth Circuit has found a similar percentage raises an inference of discrimination. *See Paulino v. Castro*, 371 F.3d 1083 (9th Cir. 2004) (citing with approval *Turner v. Marshall*, 63 F.3d 807 (9th Cir. 1995) (finding that removal of four out of nine jurors of the same cognizable racial group, a rate of 55%, was sufficient to raise an inference of discrimination),

*overruled on other grounds by Tolbert v, Page*, 182 F.3d 677 (9th Cir. 1999) (*en banc*)).

Moreover, a relevant fact in determining whether a prima facie case is met are the prosecutor's questions and statements to the venire as they may provide insight into the prosecutor's motive. *Collins*, 551 F.3d at 921 (citing *Batson*, 476 U.S. at 97). "Likewise, the fact that the prosecutor fails to 'engage in meaningful questioning of any of the minority jurors' might indicate the presence of discrimination." *Id*. (quoting *Fernandez*, 286 F.3d at 1079). Here, the appellate court seemingly ignored the prosecutor's failure to ask any questions of Ms. N; instead finding that the questioning of all jurors were similar despite the trial court's comment that there was a lack of information on Ms. N as opposed to the other stricken jurors. (Lod. Doc. 4 at 9; Lod. Doc. 10 at 397). This failure to question Ms. N indicates the presence of discrimination and is especially glaring since Ms. N possessed characteristics that would have been favorable to the prosecution. While the circumstances that the appellate court highlighted–specifically, that there were two remaining jurors of African American descent, the prosecutor only used two out of the prosecutor's sixteen peremptory strikes to excuse African American jurors, and Petitioner was not of African American descent–weigh against the ultimate finding that the prosecutor's peremptory strike of Ms. N was racially motivated, the first step is only concerned with whether Petitioner produced enough evidence for an inference of discrimination. In essence, the appellate court's consideration of these factors seem to require that Petitioner prove a case of racial discrimination. Applying the burden of production required in the first step, it is clear that Petitioner established a prima facie claim under *Batson* as: 1) the prosecutor struck 50% of the prospective African American jurors from the panel and 2) the prosecutor fail to question Ms. N prior to exercising the peremptory strike despite Ms. N's possessing favorable characteristics. Thus, the Court of Appeal's decision constituted an objectively unreasonable application of *Batson*.

Where the State court unreasonably applies clearly established federal law, a federal habeas court must examine whether Petitioner's constitutional rights were in fact violated. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3) in noting that a federal habeas court's finding that State court's decision is contrary to established federal law does not end that court's inquiry as the "power to grant the writ of habeas corpus to a state inmate depends on his

actually being 'in custody in violation of the Constitution or laws ... of the United States'").  To this end, the Court must apply a *de novo* standard of review to determine whether a constitutional violation has occurred.  *Id* at 633.

Although the trial court erred in not finding a prima facie case, the second step of *Batson* was satisfied as the prosecutor offered a race neutral reason for striking Ms. N.[2]  Specifically, the prosecutor stated that Ms. N's facial expressions when answering the Court's questions indicated that she was unhappy about serving as a juror.  The prosecutor explained that, "And Ms.[N], quite frankly, I think she would make a great juror, but she does–based on my view of her expression on her face, she doesn't seem very happy about being here and I was concerned that maybe she might either hold it against myself or defense counsel if she's kept over for several weeks as a juror."  (Lod. Doc. 10 at 393-394).  Thus, the prosecutor provided "'a clear and reasonably specific' race-neutral explanation for challenging the potential juror."  *Ali*, 571 F.3d at 908 (quoting *Kesser*, 465 F.3d at 359)).  Furthermore, the reason is logically plausible and not refuted by the voir dire transcript.  *See id*. (citing *Kesser*, 465 F.3d at 360).

Thus, the Court now considers the third step of *Batson*–namely, whether the prosecutor's race-neutral reason is persuasive or "whether, despite the prosecutor's proffered justification, the [petitioner] has nonetheless met his burden of showing 'purposeful discrimination.'"  *Ali*, 571 F.3d at 908 (quoting *Kesser*, 465 F.3d at 359).  "The question is not whether the stated reason represents a sound strategic judgement, but 'whether counsel's race-neutral explanation for a peremptory challenge should be believed.'"  *Kesser*, 465 F.3d at 359 (quoting *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion)).  A court need not accept any proffered rational and must consider each explanation within the entire trial context.  *Id*.

Here, the record does not evidence that the prosecutor's proffered reason was pretext.  Unlike in *Kesser* and *Ali*, comparative juror analysis does not provide any insight as there were no instances in which another juror possessed the same characteristic–ambivalence or displeasure about serving

---

[2]As the prosecutor offered a race-neutral reason, the Court does not find that there is a need for an evidentiary hearing.  This is also true with respect to the third stop of *Batson* as the record is sufficient for the Court to make a determination as to whether Petitioner has proven that race was the motivating factor behind the prosecutor's use of the peremptory strike.

on the jury–and was not excused.  However, defense counsel stated that he observed no facial expressions during Ms. N's voir dire that were inconsistent with other jurors.  (Lod. Doc. 10 at 395). The prosecutor's failure to question Ms. N about her ambivalence or lack of enthusiasm for serving as a juror is also indicative of pretext.  *See Ali*, 571 F.3d at 920 (citing to *Miller-El*, 545 U.S. at 244 for proposition that failure to question a jury member indicates an ulterior motive as the prosecutor would have cleared up a misunderstanding by asking further questions).   However, a consideration of the other relevant circumstances–namely, the fact that two prospective African American jurors remained, that the prosecutor only used two of sixteen peremptory strikes against African American jurors, and that neither the victim nor Petitioner were African American–leads the Court to the conclusion that the strike was not racially motivated.  Thus, Petitioner has failed to meet his burden of persuasion required in the third *Batson* step and the petition for writ of habeas corpus must be denied.

## IV.    Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right."  Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial

showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:     October 23, 2009**              /s/ John M. Dixon
                                                         UNITED STATES MAGISTRATE JUDGE